FILED
08/06/2024
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 7, 2024

**NANCY HARDISON (STOKES) WILLIAMS v. ERNEST K.
HARDISON, III, ET AL.**

**Appeal from the Probate Court for Davidson County**
**No. 17P-1223      Randy Kennedy, Judge**

_____

**No. M2022-01596-COA-R3-CV**

_____

This is a breach of trust action by a trust beneficiary, Nancy Hardison (Stokes) Williams ("Plaintiff"), against the co-trustees, Ernest K. Hardison, III, and Cumberland Trust and Investment Company (collectively "Defendants"). The issues raised in this appeal only pertain to Plaintiff's claims against Cumberland Trust and Investment Company ("Cumberland"). Plaintiff alleged, inter alia, that Cumberland committed a breach of trust by failing to properly manage and invest trust assets resulting in the trust sustaining significant financial losses. In her effort to recover damages against Cumberland, Plaintiff also sought to declare two trust indemnity and investment agreements—which she and all qualified beneficiaries entered into with Cumberland in 2006 and 2009—void *ab initio* on the basis that they are unenforceable pursuant to Tennessee Code Annotated § 35-15-1008 because they violate a material purpose of the trust. She also contended that the agreements are unenforceable because they constitute "an abuse of a fiduciary or confidential relationship" pursuant to Tennessee Code Annotated § 35-15-1008(b). Upon the motion of Defendants for partial summary judgment, the trial court dismissed all of Plaintiff's claims arising prior to July 1, 2016, as barred by the one-year statute of limitations set forth in Tennessee Code Annotated § 35-15-1005(a). Additionally, upon the finding that Plaintiff and the qualified beneficiaries had released Cumberland from liability pursuant to the indemnity and investment agreements, the trial court summarily dismissed all remaining claims against Cumberland. The court then awarded Cumberland its attorney's fees and costs in the amount of $45,594.70 pursuant to Tennessee Code Annotated § 35-15-1004(a). This appeal followed. We affirm the trial court in all respects. We also find that Cumberland is entitled to recover the reasonable and necessary attorney's fees and expenses it has incurred in this appeal and remand this issue to the trial court to make the appropriate award.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court
Affirmed and Remanded**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the court, in which ANDY D. BENNETT, J., and J. STEVEN STAFFORD, P.J., W.S., joined.

James C. Bradshaw, III, Ann Weber Langley, and Tyree B. Harris, IV, Nashville, Tennessee, for the appellant, Nancy Hardison (Stokes) Williams.

Paul A. Gontarek, Nashville, Tennessee, for the appellee Cumberland Trust and Investment Company.

## OPINION

### FACTS AND PROCEDURAL HISTORY

Plaintiff's father, Ernest K. Hardison, Jr. ("Testator"), executed his will on November 10, 1972, followed by a first and second codicil executed on October 1, 1973, and January 28, 1986, respectively (collectively the "Will"). Following Testator's death in 1986, two testamentary trusts were established pursuant to item seven of the Will: one for the benefit of Testator's son, Ernest K. Hardison, III ("Mr. Hardison"), and a separate trust for his daughter, Plaintiff (hereinafter "Plaintiff's trust" or the "Trust").[1] Only Plaintiff's trust is at issue in this appeal.

Plaintiff's trust was established for her benefit during her lifetime, with the trustees to pay Plaintiff the net income from the trust, encroaching upon the corpus of the trust as needed, for her comfort and support. Upon her death, the trust is to pass to her children, distributed per stirpes once her youngest child attains the age of twenty-two.[2]

As provided by item eight of the Will, Mr. Hardison and a bank or trust company selected by Mr. Hardison would serve as the initial co-trustees. Furthermore, item one of the Will provided that the "bank or trust company so appointed shall have, upon the date of appointment, unimpaired capital and surplus of not less than Fifteen Million Dollars ($15,000,000.00)." Upon Mr. Hardison's selection, Bank of America, N.A., served as the initial corporate co-trustee.[3]

---

[1] Plaintiff's trust is identified by the parties as the Ernest K. Hardison, Jr. Trust for the use and benefit of Nancy Hardison (Stokes) Williams.

[2] Upon Plaintiff's death, item seven, paragraph (f) of the Will provides that the remaining trust property will continue to be held in trust for the benefit of Plaintiff's children until her youngest living child attains the age of 22 years, at which time the remaining trust property will be distributed to her children, per stirpes. Plaintiff has three living children: Jamie Lyn Williams, Susan Collins Stokes DuBose, and Whitworth Stokes, III.

[3] Bank of America satisfied the capital and surplus requirements as stated in the Will.

The Will, as amended by the first codicil, provided the means for the removal of trustees and appointment of successor trustees, specifically:

Any corporate trustee or co-trustee may be removed from office as such at any time, and without assignment of cause, by the then living adult current income beneficiary or beneficiaries of any such trust. . . . In the event of the exercise of this power, the beneficiary of that trust shall immediately appoint a successor trustee having the qualifications as prescribed in ITEM ONE.[4]

Mr. Hardison and Bank of America served as co-trustees until 2006. As Plaintiff avers in her complaint, because Mr. Hardison was "chaffing under the oversight of his institutional co-trustee Bank of America," Plaintiff, at Mr. Hardison's request, signed a letter addressed to Bank of America on August 15, 2006, giving notice to Bank of America that it was being removed as the corporate co-trustee and stating that she would be appointing Cumberland to serve as the corporate co-trustee along with her brother going forward.[5]

Prior to accepting its appointment in 2006, Cumberland notified Mr. Hardison, who in turn notified Plaintiff, that Cumberland does not provide investment management services for trusts and, thus, it would not be responsible for managing the Trust's assets or investments. Furthermore, Cumberland required that Plaintiff and all of the qualified beneficiaries of the Trust,[6] meaning Plaintiff and her three children (all of whom were adults at the time), execute a trust indemnity and investment agreement ("the Indemnity Agreement") pursuant to which the beneficiaries would appoint "an investment advisor" of their choosing who would be solely responsible for managing the Trust's assets and its investment decisions. Pursuant to the Indemnity Agreement, Plaintiff and the qualified beneficiaries also relieved Cumberland of any responsibility or liability for management

---

[4] At all times material to this action, Plaintiff was "the then living adult current income beneficiary" of the Trust.

[5] It is undisputed that Plaintiff and Mr. Hardison were aware, prior to Cumberland's appointment, that Cumberland did not have "unimpaired capital and surplus of not less than Fifteen Million Dollars"; thus, it was known by all parties that Cumberland did not meet the financial criteria set forth in the Will.

[6] A beneficiary is "'a person that has either a present or future interest in a trust, vested or contingent; or in a capacity other than trustee, holds a power of appointment over trust property.'" Marshall H. Peterson, *Tenn. Unif. Tr. Code New Formulation for a Trusty Tool*, Tenn. B.J., January 2005, at 24, 25 (2005) (quoting Tennessee Code Annotated § 35-15-103(2)). To be distinguished, a "qualified beneficiary" is defined as "'a beneficiary who on the date the beneficiary's qualification is determined: (A) is a distributee or permissible distributee of trust income or principal; (B) would be a distributee or permissible distributee of trust income or principal if the interests of the distributees described in subparagraph (A) terminated on that date; or (C) would be a distributee or permissible distributee of trust income or principal if the trust terminated on that date.'" *Id*. (quoting Tennessee Code Annotated § 35-15-103(24)).

or supervision of the Trust's assets or investments. In pertinent part, the 2006 Indemnity Agreement reads:[7]

>    1. Agreement Regarding Investment Responsibility. Cumberland Trust agrees to act with respect to liquid Trust investments, including but not limited to, marketable securities, cash, and cash equivalents in accordance with the recommendations of Client or any investment advisor designated by Client from time to time. It is expressly agreed that Cumberland Trust will rely upon these recommendations without independent investigations and that Cumberland Trust's investment responsibility and liability as Trustee with respect to liquid trust assets will be limited thereby.

>    2. Custody of Assets; Compensation of Investment Advisors. Client acknowledges that Cumberland Trust shall not maintain custody of the trust assets. Client further acknowledges that Cumberland Trust shall not be required to negotiate a compensation arrangement with the investment advisor(s) that produces a best execution price. As a result, the investment advisor(s) may receive commissions on purchases or sales of securities and/or mutual funds and loads may be paid on the purchase of mutual funds in the Trust.

>    *     *     *     *

>    5. Indemnification. In consideration of this agreement, Client, individually and for [their] heirs, representatives, successors, and assigns, hereby expressly agrees to indemnify and hold harmless Cumberland Trust, its affiliates, successors, assigns, and directors, officers and employees (the "Indemnitees") from and against any and all claims, demands, losses, damages, liabilities, actions, and causes of action, and expense, including without limitation attorneys' fees and litigation costs, which Indemnitees, or any of them, at any time may sustain or incur by reason of the appointment of any Investment advisor designated by Client from time to time, or by reason of the reliance of any Indemnitee upon the action, or inaction, of any such investment advisor, except for their gross negligence or fraud. Client, individually and for his successors, heirs, and personal representatives, and as the parent of any minor children further exonerates, holds harmless, and indemnifies Indemnitees from any and all claims, demands, losses, damages, liabilities, actions, and causes of action, and expense, including without limitation attorneys' fees and litigation costs, which Indemnitees, or any of them, at any time may sustain or incur by reasons of Cumberland's not

---

[7] Plaintiff and the qualified beneficiaries are referred to as "Client" throughout the Indemnity Agreement.

meeting the state capital and surplus requirement imposed on the successor trustee under the trust instrument.

Further, the 2006 Indemnity Agreement also states in paragraphs four and five that Plaintiff and the qualified beneficiaries had selected Mickey Long ("Mr. Long") of Smith Barney to serve as the investment advisor for the Trust and that Cumberland would act in accordance with Mr. Long's recommendations with respect to the investment of the Trust assets.

Upon Cumberland's substitution as a co-trustee and the appointment of Mr. Long as the investment advisor, Plaintiff began receiving detailed monthly account statements directly from Mr. Long, as well as quarterly reports from Cumberland, which provided an overview of the investments along with details for each investment and transaction made by the investment advisor.

Mr. Long served as the investment advisor for the Trust until March 2009 when he left Smith Barney, at which time Plaintiff and the qualified beneficiaries executed another trust indemnity and investment agreement[8] to, inter alia, document their appointment of Edgar Stuart with Smith Barney as the Trust's new investment advisor, which they did.

By late 2016 or early 2017, when Plaintiff was informed that her income from the Trust would be reduced from $1600 to $1400 per month, Plaintiff began to question the financial management of the Trust. The Trust had lost about 56 percent of its value while Cumberland was co-trustee.

Then, on July 11, 2017, Plaintiff commenced this action against Cumberland and her brother, Mr. Hardison. Regarding Cumberland, she alleged, inter alia, that Cumberland's managerial decisions resulted in the substantial diminution of the corpus of the Trust. She also alleged that Cumberland charged excessive fees.

She asked the court to declare the Indemnity Agreement void *ab initio* pursuant to Tennessee Code Annotated § 35-15-1008 and to require Cumberland to restore the value of the Trust in an amount to include "unjustified fees charged, the profit [Cumberland] realized by reason of the breach of trust, and the losses sustained by the trust as a result of the unjustified and risky investment strategy utilized by [Cumberland]." She also asked the court to remove both Defendants as co-trustees.

Defendants answered, denying any breach of trust or mismanagement. For its part, Cumberland also contended that the petition fails to state a claim upon which relief may be

---

[8] The 2009 agreement is identical in all respects to the 2006 agreement except that paragraph four designated Edgar W. Stuart as the investment advisor. Because the 2006 and 2009 agreements are identical in all respects, except that paragraph four designated a different investment advisor, we shall refer to the two agreements collectively as "the Indemnity Agreement" or "the Agreement," as the context requires.

granted "due to the provisions of the Trust Indemnity and Investment Agreement, which specifically provides indemnification to Cumberland Trust for any losses, damages, liabilities, attorneys' fees and litigation costs which might arise by reason of the appointment of any investment advisor."

Shortly thereafter, Defendants filed motions to resign as co-trustees and submitted accountings. The trial court accepted the resignations of Defendants as co-trustees at a hearing that took place on December 17, 2017. At the same hearing, Plaintiff's counsel moved the court to permit her to serve as the sole trustee. Finding that the appointment of Plaintiff as the sole trustee without a corporate co-trustee "is not inconsistent with a material purpose for which the Trust was created," the court granted Plaintiff's motion, and Plaintiff has served as the sole trustee of the trust ever since.

On February 14, 2018, Cumberland filed a motion for partial summary judgment, on the bases that: 1) the Indemnity Agreement released Cumberland from all liability, and 2) the breach of trust claims were barred by the one-year statute of limitations set forth in Tennessee Code Annotated § 35-15-1005. On April 27, 2018, upon Plaintiff's motion and Defendants' agreement, the trial court granted an "indefinite" continuance for Plaintiff to conduct discovery and respond to the motion for partial summary judgment.

On March 8, 2019, Plaintiff filed an amended petition in which she sought damages against Mr. Hardison[9] and restated her claims against Cumberland. Specifically, she alleged that Mr. Hardison had "made material misrepresentations, omissions and failures to disclose as to his motivation and actions with respect to the decisions . . . and investments he was making in the trust." She also claimed that she signed the Indemnity Agreement in reliance on Mr. Hardison's "affirmative misrepresentations, omissions and failures to disclose." Further, Plaintiff claimed that Mr. Hardison "negligently failed to monitor the excessive fees being charged by [Cumberland], in breach of his fiduciary duty as Co-Trustee" and that he "persistently failed to invest and manage trust assets as a prudent investor would, and failed to exercise reasonable care, skill and caution in managing the trust, given the purposes, terms and distribution requirements of the trust." As such, she averred that Mr. Hardison, along with Cumberland, should be "required to restore the value of the trust property in an amount to include the unjustified fees charged, the profit [Cumberland] realized by reason of the breach of trust, and the losses sustained by the trust as a result of the unjustified and risky investment strategy utilized by [Defendants]."

One year later, Defendants filed a second motion for partial summary judgment on the same bases as the first. In an order entered November 18, 2020, the trial court granted partial summary judgment "with respect to all claims asserted by [Plaintiff] . . . arising

---

[9] In the initial complaint, Plaintiff sought to remove Mr. Hardison as co-trustee, but she did not seek damages against Mr. Hardison. The allegations and claims for relief against Cumberland were essentially the same in the initial and amended complaint.

prior to July 1, 2016, which are barred by the statute of limitations set forth in Tenn. Code Ann. § 35-15-1005(a)."

Further, after finding that no material purpose of the Trust had been violated by the Indemnity Agreement, the trial court found that the Indemnity Agreement was binding and that Plaintiff had released Cumberland from liability related to the Trust's investment performance when she executed the Agreement. Therefore, the court summarily dismissed all claims against Cumberland related to the Trust's investment performance.[10] The court also ruled that Cumberland was entitled to recover its reasonable costs and expenses, including reasonable attorney's fees pursuant to Tennessee Code Annotated § 35-15-1004(a).

The court then found that the attorneys' fees requested by counsel for Cumberland and Mr. Hardison, totaling $91,189.40, were "reasonable, necessary, and properly awardable against the Trust and/or [Plaintiff] in accordance with Tenn. Code Ann. § 35-15-1004(a)." The court also ruled that half of those fees, $45,594.70, were incurred to defend Cumberland. Accordingly, the court awarded Cumberland a judgment in that amount. Further decisions regarding the half of the attorney's fees "deemed to be the half incurred to defend Mr. Hardison" were held in abeyance until all claims against Mr. Hardison had been adjudicated.

The court also found that the order awarding Cumberland's attorney's fees, together with the November 18, 2020 order granting summary judgment in favor of Cumberland, "constitute[d] a final order . . . with respect to all claims asserted against Cumberland" that is "immediately appealable by [Plaintiff]."[11]

This appeal by Plaintiff followed.

## ISSUES

Plaintiff presents three issues for our consideration, which we rephrase as follows:

1. Whether the trial court erred in finding that Defendant Cumberland was indemnified from liability pursuant to the Indemnity Agreement;

---

[10] With regard to the claims against Mr. Hardison, the trial court held, "Claims asserted by [Plaintiff] against Mr. Hardison arising on or after July 1, 2016 remain pending. Such claims against Mr. Hardison are not barred by contract or by the statute of limitations."

[11] The order also states, "Furthermore, with respect to Cumberland, the court finds that this Order, together with the Court's Order entered November 18, 2020 granting partial summary judgment in favor of the Respondents, should constitute a final order pursuant to Tenn. R. Civ. P. 54.02, as there is no just reason for delay."

2. Whether the trial court erred in finding no genuine issue of material fact that the applicable statute of limitations, Tennessee Code Annotated § 35-15-105, bars any claims against Defendant Cumberland arising prior to July 1, 2016; and

3. Whether the trial court erred in awarding Defendant Cumberland its attorneys' fees and costs pursuant to Tennessee Code Annotated § 35-15-1004(a).

Cumberland presents four issues, the first three of which are substantially the same as Plaintiff's issues. The fourth issue raised by Cumberland reads: "Whether the attorneys' fees and expenses incurred by Cumberland Trust in this appeal should be awarded against the Appellant and/or the trust pursuant to Tenn. Code Ann. § 35-15-1004(a)."[12]

## STANDARD OF REVIEW

This court reviews a trial court's decision on a motion for summary judgment de novo without a presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015). Accordingly, this court must make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been satisfied. *Id.*; *Hunter v. Brown*, 955 S.W.2d 49, 50 (Tenn. 1997). In so doing, we consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002).

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. When the party moving for summary judgment does not bear the burden of proof at trial, it "may satisfy its burden of production either (1)

---

[12] Cumberland's first three issues read:

1. Whether the Circuit Court correctly determined that the claims asserted by the Appellant arising prior to July 1, 2016, were barred by the statute of limitations in Tenn. Code Ann. § 35-15-1005(a).

2. Whether the Circuit court correctly determined that the 2006 and 2009 Trust Indemnity and Investment Agreements signed by the Appellant released Cumberland Trust from liability for all claims related to the trust's investment performance.

3. Whether the Circuit Court correctly determined that attorneys' fees and expenses incurred by Cumberland Trust in defending against the Appellant's claims should be awarded against the trust and the Appellant, jointly and severally, pursuant to Tenn. Code Ann. § 35-15-1004(a).

by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence at the summary judgment stage is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264.

When a motion for summary judgment is made and supported as provided in Tennessee Rule of Civil Procedure 56, the nonmoving party may not rest on the allegations or denials in its pleadings. *Id.* at 265. Instead, the nonmoving party must respond with specific facts showing there is a genuine issue of material fact for trial. *Id.* A fact is material "if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). A "genuine issue" exists if "a reasonable jury could legitimately resolve that fact in favor of one side or the other." *Id.*

"[I]ssues of statutory construction are questions of law." *Ki v. State*, 78 S.W.3d 876, 879 (Tenn. 2002) (quoting *Stewart v. State*, 33 S.W.3d 785, 791 (Tenn. 2000)). "We review such issues de novo, according no presumption of correctness to the conclusions reached by the trial court." *Id.* (citing *Walker v. Board of Prof'l Responsibility*, 38 S.W.3d 540, 544 (Tenn. 2001); *Reeves v. Granite State Ins. Co.*, 36 S.W.3d 58, 60 (Tenn. 2001)).

"Trust instruments are interpreted similarly to contracts, deeds, or wills." *Brock v. Brock*, 661 S.W.3d 133, 138 (Tenn. Ct. App. 2022) (quoting *In re Estate of Marks*, 187 S.W.3d 21, 28 (Tenn. Ct. App. 2005)). "Determining the settlor's intent is important and may be easily done by looking to the four corners of the trust instrument." *Id.* (citing *Marks v. S. Tr. Co.*, 310 S.W.2d 435, 438 (Tenn. 1958)).

As our Supreme Court has noted:

> "[T]he important thing in the construction of the trust instrument is to determine the intention of the settlor as evidenced by all the provisions of the instrument, giving no portion any greater emphasis than any other." *Marks*, 310 S.W.2d at 437–38; *see also* Tenn. Code Ann. § 35-15-112 (2015) ("The rules of construction that apply in this state to the interpretation of and disposition of property by will also apply as appropriate to the interpretation of the terms of a trust and the disposition of the trust property."); Tenn. Code Ann. § 35-15-101, 2013 Restated Comments ("It is a primary objective of the Tennessee trust statutes that a settlor's intent be the lodestar by which a trust is interpreted. . . ."). "In determining this intention we cannot follow any hard and fast rule but each case must be considered on its own bottom." *Marks*, 310 S.W.2d at 438. "The peculiar facts and circumstances and so forth, are considered to determine what is this intention. It is not necessarily so much the language that is used by the settlor as it is his or her evident intention which governs." *Id.*

*Harvey ex rel. Gladden v. Cumberland Tr. & Inv. Co.*, 532 S.W.3d 243, 261 (Tenn. 2017).

## ANALYSIS

### I.

Plaintiff's first issue is whether the trial court erred in finding that Defendant Cumberland was indemnified from liability pursuant to the Indemnity Agreement. Plaintiff's contentions regarding this issue are based on two grounds.

First, Plaintiff contends that the Indemnity Agreement is invalid because it violates a material purpose of the Trust. Second, Plaintiff contends that the Indemnity Agreement is invalid because the contents of the Indemnity Agreement were not communicated to Testator, who was the settlor, and Tennessee Code Annotated § 35-15-1008(b) provides that "[a]n exculpatory term drafted or caused to be drafted by the trustee is invalid as an abuse of a fiduciary duty or confidential relationship unless the trustee proves that the exculpatory term is fair under the circumstances and that its existence and contents were adequately communicated to the settlor." We address each of these arguments below.

### A. Material Purpose of the Trust

Plaintiff contends that the appointment of Cumberland as the corporate co-trustee of the Trust resulted in an alteration of a material purpose of the Trust, which rendered the Indemnity Agreement void. In making this argument, Plaintiff relies on Tennessee Code Annotated § 35-15-411(c), which reads: "Following the settlor's death, a noncharitable irrevocable trust may be modified . . . upon the unanimous agreement of the trustee and all qualified beneficiaries if such modification . . . does not violate a material purpose of the trust."[13] As a subset of this argument, Plaintiff also contends that it was improper to appoint Cumberland as a co-trustee and relieve it of any responsibility for managing and investing the assets of the Trust by utilizing a "nonjudicial settlement agreement" as set forth in Tennessee Code Annotated § 35-15-111. We shall discuss each issue in turn.

Plaintiff contends that the provision in the Will that the "bank or trust company so appointed shall have, upon the date of appointment, unimpaired capital and surplus of not less than Fifteen Million Dollars ($15,000,000.00)" constituted a material purpose of the Trust. It is undisputed that, at the time of its appointment as the corporate co-trustee, Cumberland did not have the unimpaired capital and surplus specified in the Will.

---

[13] Here, it is undisputed that the settlor, Testator, died long before the Indemnity Agreement was entered into, that Plaintiff's trust is a noncharitable trust, and that it became irrevocable following the settlor's death.

We find this contention problematic because it is in direct conflict with Plaintiff's actions in the trial court. Immediately following the resignation of the co-trustees, Mr. Hardison and Cumberland, Plaintiff filed a motion in the trial court requesting that the court appoint her as the sole trustee, notwithstanding "the material provision" in the Will, upon which Plaintiff relies in this appeal, that requires a bank or trust company with a minimum of fifteen million dollars in capital and surplus to be appointed to serve as co-trustee. We also find it significant that the trial court granted Plaintiff's motion based on the express finding that appointing Plaintiff as the sole trustee of the Trust "did not violate a material purpose of the trust."[14]

As Cumberland notes in its brief, "If no material purpose of the Trust was violated when the requirement of a corporate co-trustee was dispensed with entirely [with the appointment of Plaintiff as sole trustee], it would defy reason to conclude that the lesser modification of appointing [Cumberland] a corporate co-trustee without $15 million in capital and surplus *did* violate a material purpose of the Trust[.]" We agree.

The foregoing notwithstanding, we will consider Plaintiff's contention that the appointment of Cumberland as co-trustee violated a material purpose of the trust.

While neither party cites authority that defines or otherwise describes what constitutes a material purpose of a trust, our research provides the following guidance. In Restatement (Third) of Trusts Section 65, we learn that the line is not easy to draw between a "material purpose" of a trust, on the one hand, and "specific intentions" that are deemed less important, on the other:

> Occasionally, a settlor expressly states in the will, trust agreement, or declaration of trust that a specific purpose is the primary purpose or a material purpose of the trust. Otherwise, the identification and weighing of purposes under this section frequently involve a relatively subjective process of interpretation and application of judgment to a particular situation, much as purposes or underlying objectives of settlors in other respects are often left to be inferred from specific terms of a trust, the nature of the various interests created, and the circumstances surrounding the creation of the trust. The question is narrower and more focused, although not necessarily easier, when applied to a specific modification rather than to the termination of the trust.
>
> Material purposes are not readily to be inferred. A finding of such a purpose generally requires some showing of a particular concern or objective on the

---

[14] Ironically, if we were to agree with Plaintiff's material purpose contentions on appeal, then her appointment as the sole trustee would arguably be a nullity.

- 11 -

part of the settlor, such as concern with regard to a beneficiary's management skills, judgment, or level of maturity. Thus, a court may look for some circumstantial or other evidence[.]

*Id*.

Here, the parties have offered no evidence other than the Will, i.e., the Trust, to reveal Testator's purpose, material or not, in stating that there would be co-trustees and that one of them would be a corporate trustee with minimum capital and surplus standards. Upon reading the Will, the only "intent" or "purpose" expressly stated in the Will appears in paragraph 10 of item eight. It reads as follows: "In creating these trusts **it is my intention** to provide security for the beneficiaries, and **it is my purpose** that such funds be expended wherever and whenever necessary for the comfort and support of the particular beneficiaries." (emphasis added).

Thus, Testator's only expressed intent and purpose was to provide security, comfort and support for the beneficiaries of the Trust, they being Plaintiff and her three children. Whether the provision stating that Mr. Hardison's co-trustee was to be a corporate fiduciary with capital and surplus requirements constitutes "a material purpose" or merely "a specific intention" is uncertain because neither party has set forth any direct or circumstantial evidence on this issue and "[m]aterial purposes are not readily to be inferred." *See* Restatement (Third) of Trusts Section 65.

For the foregoing reasons, we find no error with the trial court's ruling that the appointment of Cumberland as the corporate co-trustee did not violate a material purpose of the Trust.

## B. The Indemnity Agreement

Plaintiff also challenges the means by which Cumberland was appointed as co-trustee and relieved of any responsibility for managing and investing the assets of the Trust. Our analysis of this issue requires a brief discussion of the evolution of the Tennessee Uniform Trust Code.

The Tennessee Uniform Trust Code, Tennessee Code Annotated §§ 35-15-101 to -1301 (the "Act"), was enacted in 2004 as "a comprehensive code to govern trusts." *Tenn. Div. of United Daughters of the Confederacy v. Vanderbilt Univ.*, 174 S.W.3d 98, 113 n.18 (Tenn. Ct. App. 2005). The Act was amended effective July 1, 2013, and the amended Act expressly states that it applies "to all trusts created **before, on, or after** such effective date" and "to all judicial proceedings concerning trusts commenced on or after such effective date." 2013 Tenn. Pub. Acts 390, § 55 (emphasis added). Thus, the Act as amended applies to Plaintiff's trust and our analysis of the issues presented.

A new concept to Tennessee trust law resulting from the 2013 amendments, which dovetails with the increasing use of alternate dispute resolution methods, is the "nonjudicial settlement agreement" set forth in Tennessee Code Annotated § 35-15-111. *See* Marshall H. Peterson, *Tennessee Unif. Tr. Code New Formulation for a Trusty Tool*, Tenn. B.J., January 2005, at 24, 25 (2005) (citing Tenn. Code Ann. § 35-15-111). The Act now authorizes a trustee and the qualified beneficiaries of a trust to resolve "any matter involving a trust," specifically including, but not limited to, the "[d]irection to a trustee to refrain from performing a particular act" and/or the "[l]iability of a trustee for an action relating to the trust." *See* Tenn. Code Ann. § 35-15-111(c)(3) and (6).

Relevant provisions of this section of the Act include the following: "Except as otherwise provided in subsection (b), the trustee and the qualified beneficiaries may enter into a binding nonjudicial settlement agreement with respect to any matter involving a trust." Tenn. Code Ann. § 35-15-111(a). "A nonjudicial settlement agreement is valid only to the extent it does not violate a material purpose of the trust and includes terms and conditions that could be properly approved by the court under this chapter or other applicable law." Tenn. Code Ann. § 35-15-111(b). Because we have already determined that the appointment of Cumberland did not violate a material purpose of the Trust, we shall now focus on the other provisions in the Indemnity Agreement.

Matters that may be resolved by a nonjudicial settlement agreement include, but are not limited to:

(1) The interpretation or construction of the terms of the trust; . . .
(3) Direction to a trustee to refrain from performing a particular act or the grant to a trustee of any necessary or desirable power; . . .
(6) Liability of a trustee for an action relating to the trust; . . .
(10) The resignation, appointment, and establishment of the powers and duties of trust protectors or trust advisors; and
(11) The approval of an investment decision, delegation, policy, plan, or program.

Tenn. Code Ann. § 35-15-111(c).

Another significant and relevant change appears in a new section, part 12 to Title 35, Chapter 15, that authorizes the appointment of "trust advisors"[15] who shall be solely

---

[15] A "trust advisor is any person . . . other than a trustee, who under the terms of the trust, an agreement of the qualified beneficiaries, or a court order has a power or duty with respect to a trust, including but not limited to, one or more of the following powers: . . . the power to direct the acquisition, disposition, or retention of any trust investment." Tenn. Code Ann. § 35-15-1201(a)(13).

responsible for investment decisions and the exculpation of a trustee, known as an excluded fiduciary,[16] for the acts or omissions of the trust advisor's financial decisions.

The 2006 and 2009 indemnity agreements, collectively, "the Indemnity Agreement," state in paragraph one that Cumberland would "act, with respect to liquid Trust investments, . . . in accordance with the recommendations of Client [the qualified beneficiaries] or any investment advisor designated by Client from time to time." They further provide that "Cumberland Trust will rely upon these recommendations without independent investigation and that Cumberland Trust's investment responsibility and liability as Trustee . . . will be limited thereby."[17] Thus, the Indemnity Agreement addresses matters that may be resolved by a nonjudicial settlement agreement. *See* Tenn. Code Ann. § 35-15-111(c).

As noted above, the Act authorizes qualified beneficiaries and trustees to utilize non-judicial settlement agreements to address "any matter involving a trust," specifically including, but not limited to, the "[d]irection to a trustee to refrain from performing a particular act," "[l]iability of a trustee for an action relating to the trust," and "[T]he approval of an investment decision, delegation, policy, plan." *See* Tenn. Code Ann. § 35-15-111(c)(3), (6) and (11). The Indemnity Agreement at issue here addresses the objectives and utilizes the provisions provided for by the Act and Tennessee Code Annotated § 35-15-111(c). And as explained in the 2013 Restated Comments to the Official Text to Tennessee Code Annotated § 35-15-411, "Nonjudicial settlement agreements between the trustee and the qualified beneficiaries should be applicable to the resolution of any matter of an administrative nature that does not alter a beneficiary's income or principal interest in the trust." Tenn. Code Ann. § 35-15-411 (2013 Restated Comments). And the changes to Plaintiff's trust at issue in this appeal do not alter any beneficiary's income or principal interest in the Trust.

The Act also authorizes the appointment of a "trust advisor" and the delineation of responsibilities among the trust advisor and other trustees. *See* Tenn. Code Ann. § 35-15-710. The term "trust advisor," as defined in Tennessee Code Annotated § 35-15-1201(a), includes:

---

[16] An "excluded fiduciary" under the Act is a trustee who is excluded from exercising a power or is relieved of a duty and that power or duty is granted or reserved to another person, such as a trust advisor. *See* Tenn. Code Ann. § 35-15-103(12).

[17] A nonjudicial settlement agreement may include "[d]irection to a trustee to refrain from performing a particular act or the grant to a trustee of any necessary or desirable power; . . . [l]iability of a trustee for an action relating to the trust; [and] . . . the approval of an investment decision, delegation, policy, plan, or program." *See* Tenn. Code Ann. § 35-15-111(c)(3), (6), and (11).

- 14 -

[A]ny person, . . . other than a trustee, who under the terms of . . . an agreement of the qualified beneficiaries, . . . has a power or duty with respect to a trust, including but not limited to, one or more of the following powers:

.        .        .        .

(12) The power to consent to a trustee's or cotrustee's action or inaction relating to investments of trust assets;

(13) The power to direct the acquisition, disposition, or retention of any trust investment.

The Act further provides: "If . . . an agreement of the qualified beneficiaries . . . requires a trustee . . . to follow the direction of a trust advisor . . . , and the trustee . . . acts in accordance with such direction, then the trustee . . . so directed must be treated as an excluded fiduciary." Tenn. Code Ann. § 35-15-710. As the Act further provides, when a trust has such a relationship between a trust advisor and an excluded fiduciary, the trust is referred to as a "directed trust," which is statutorily defined to mean a trust where "one or more persons are given the authority to direct or consent to a fiduciary's actual or proposed investment decision, distribution decision, or any other decision of the fiduciary." Tenn. Code Ann. § 35-15-103(8).

Upon the execution of the Indemnity Agreement, the qualified beneficiaries of the Trust appointed an investment advisor to direct the management of the Trust assets.[18] More importantly to the issue at hand, the Indemnity Agreement further provided that "Cumberland Trust will rely upon [the investment advisor's] recommendations without independent investigation." Thus, Cumberland became an excluded fiduciary, as that term is defined in the Act.

In addition to the express exculpatory language in the agreements, Tennessee Code Annotated § 35-15-1204, releases "excluded fiduciaries," such as Cumberland, from liability for duties and functions assigned to trust advisors of directed trusts as follows:

No duty to review actions of trustee, trust advisor, or trust protector.

(a) Whenever, pursuant to . . . an agreement of the qualified beneficiaries, . . . an excluded fiduciary is to follow the direction of a trustee [or] trust advisor . . . with respect to investment decisions, . . . then, except to the

---

[18] By assigning the investment management functions of the Trust to the designated investment advisors, "trust advisors," as the term is used in Tennessee Code Annotated § 35-15-1201(a), and relieving Cumberland of these duties, the Trust became a "directed trust" and Cumberland became an "excluded fiduciary" with respect to the investment management functions of the Trust. *See* Tenn. Code Ann. §§ 35-15-103(8) and (12).

- 15 -

extent that . . . the agreement of the qualified beneficiaries . . . provide[s] otherwise, the excluded fiduciary shall have no duty to:

(1) Review, evaluate, perform investment reviews, suitability reviews, inquiries, or investigations, or in any other way monitor the conduct of the . . . trust advisor . . . ;

(2) Make recommendations or evaluations or in any way provide advice to the . . . trust advisor . . . or consult with the . . . trust advisor . . . ; or

(3) Communicate with or warn or apprise any beneficiary . . . concerning instances in which the excluded fiduciary would or might have exercised the excluded fiduciary's own discretion in a manner different from the manner directed by the . . . trust advisor . . . .

(b) Absent provisions in the trust instrument to the contrary, the actions of the excluded fiduciary pertaining to matters within the scope of the trustee [or] trust advisor['s] . . . authority, including but not limited to, confirming that the trustee [or] trust advisor['s] . . . directions have been carried out and recording and reporting actions taken at the trustee [or] trust advisor['s] . . . direction or other information pursuant to § 35-15-813, shall be deemed to be administrative actions taken by the excluded fiduciary solely to allow the excluded fiduciary to perform those duties assigned to the excluded fiduciary under the terms of the trust, the agreement of the qualified beneficiaries, or the court order; such administrative actions, as well as any communications made by the excluded fiduciary to the trust advisor . . . or any of their agents or persons they have selected to provide services to the trust, shall not be deemed to constitute an undertaking by the excluded fiduciary to monitor the trustee [or] trust advisor . . . or otherwise participate in actions within the scope of the trustee [or] trust advisor ['s] authority.

Moreover, in the context of an "excluded fiduciary," Tennessee Code Annotated § 35-15-1205 provides that

An excluded fiduciary is not liable, either individually or as a fiduciary, for:

(1) Any loss resulting from compliance with a direction of a trustee [or] trust advisor . . . , including, but not limited to, any loss from the trustee [or] trust advisor breaching fiduciary responsibilities or acting beyond the trustee's [or] trust advisor's . . . scope of authority;

- 16 -

(2) Any loss resulting from any action or inaction of a trustee [or] trust advisor . . . ; or

(3) Any loss that results from the failure of a trustee [or] trust advisor . . . to take any action proposed by the excluded fiduciary where such action requires the authorization of the trustee [or] trust advisor . . . ; provided, that an excluded fiduciary who had a duty to propose such action timely sought but failed to obtain the authorization.

The foregoing provisions of Tennessee Code Annotated §§ 35-15-1204 and 1205 demonstrate the Tennessee General Assembly's clear intention to broadly relieve excluded fiduciaries from liability for actions assigned to trust advisors of directed trusts. By its terms, the Act, which took effect July 1, 2013, applies "to all trusts created before, on, or after such effective date" and "to all judicial proceedings concerning trusts commenced on or after such effective date." 2013 Tenn. Pub. Acts 390, § 55.

Furthermore, and consistent with Tennessee Code Annotated § 35-3-122, paragraphs five and six of the Indemnity Agreement expressly released Cumberland from liability with respect to the appointment of the investment advisor and/or Cumberland's reliance on the recommendations of the investment advisor. As Tennessee Code Annotated § 35-3-122 provides:

Whenever an instrument under which a fiduciary is acting . . . vests . . . in any other person or persons including one (1) or more other fiduciaries, to the exclusion of the fiduciary . . . , authority to direct the making or retention of any investment, or to perform any other act in the management or administration of the fiduciary account, the excluded fiduciary . . . shall not be liable, either individually or as a fiduciary, for any loss resulting from the making or retention of any investment or other act pursuant to that direction.

Thus, based on the express language of the Indemnity Agreement, and as permitted by the Act, Plaintiff and all qualified beneficiaries released Cumberland from any liability for the claims asserted that pertain to the acts and omissions of the investment advisors they selected.

B. Exculpatory Terms under Tennessee Code Annotated § 35-15-1008(b).

Plaintiff contends that the Indemnity Agreement is unenforceable under Tennessee Code Annotated § 35-15-1008(b) because the exculpatory terms are not fair and were not communicated to "the settlor,"[19] meaning Testator.

Tennessee Code Annotated § 35-15-1008(b) states:

An exculpatory term drafted or caused to be drafted by the trustee is invalid as an abuse of a fiduciary or confidential relationship unless the trustee proves that the exculpatory term is fair under the circumstances and that its existence and contents were adequately communicated to the settlor.

It is readily apparent from the express language of the statute that § 35-15-1008(b) deals with exculpatory provisions drafted into the terms of a trust at the time the trust was created.[20] That is not the case here. Here, it is undisputed that the exculpatory terms were never communicated to the settlor, Testator. In fact, they were not proposed by Cumberland or approved by Plaintiff and the qualified beneficiaries until some twenty years after Testator's death.

Significantly, the Act was amended after the creation of the Trust, and the new provisions of the Act discussed above permit modifications to the Trust and agreements between the qualified beneficiaries and a trustee by means of a non-judicial settlement agreement, as was the case here.

Nevertheless, to the extent that Tennessee Code Annotated § 35-15-1008(b) may apply to this case, it is undisputed that the exculpatory terms were communicated to and approved by Plaintiff and the qualified beneficiaries. Further, the exculpatory terms were clearly and expressly explained and are fair under the circumstances.

Significantly, Cumberland made it perfectly clear that if it were to serve as a co-trustee, it would not agree to be responsible for the management and investment of the Trust's assets. Further, Plaintiff and the qualified beneficiaries were fully informed that

---

[19] A "settlor" is "a person, including a testator, who creates, or contributes property to, a trust." Tenn. Code Ann. § 35-15-103(29).

[20] As discussed in the 2013 Restated Comments to the Official Text of this section:

Subsection (b) responds to the danger that the insertion of such a clause by the fiduciary or its agent may have been undisclosed or inadequately understood by the settlor. To overcome the presumption of abuse in subsection (b), the trustee must establish that the clause was fair and that its existence and contents were adequately communicated to the settlor. In determining whether the clause was fair, the court may wish to examine: (1) the extent of the prior relationship between the settlor and the trustee; (2) whether the settlor received independent advice; (3) the sophistication of the settlor with respect to business and fiduciary matters; (4) the trustee's reasons for inserting the clause; and (5) the scope of the particular provision inserted.

they would have to appoint an investment advisor who would be responsible for the management and investment of the trust assets. They were also informed that Cumberland would have no responsibility to supervise or monitor the activities of the investment advisor. Being fully informed of these facts, Plaintiff and the qualified beneficiaries agreed to appoint an investment advisor who would be responsible for the management and investment of the Trust's assets. They further agreed to indemnify Cumberland from any liability regarding the investment advisor's management and investment of trust assets. Because Plaintiff and the qualified beneficiaries agreed that Cumberland would have no responsibilities concerning the management and investment of trust assets, it is fair that Cumberland would have no liability concerning such matters. Thus, the exculpatory terms, which were communicated to Plaintiff and the qualified beneficiaries, are fair under the circumstances.

For these reasons, we find that the Indemnity Agreement is enforceable under Tennessee Code Annotated § 35-15-1008.

## II.

Plaintiff contends that the trial court erred in finding that the applicable statute of limitations, Tennessee Code Annotated § 35-15-105, bars any claims against Cumberland arising prior to July 1, 2016. Because we have affirmed the trial court's ruling that Plaintiff and the qualified beneficiaries released Cumberland from any liability for the management and investment of the Trust assets, this issue is pretermitted as moot.

## III.

Plaintiff contends that the trial court erred in awarding attorney's fees and costs in favor of Defendant Cumberland pursuant to Tennessee Code Annotated § 35-15-1004(a).

While the trial court assessed Cumberland's attorney's fees and expenses against Plaintiff and/or the Trust, a close reading of Plaintiff's brief indicates that she is only challenging the assessment of such fees and expenses against her, not the amount of the fees nor the assessment against the Trust. This is evident from her brief, which reads:

The Trial Court abused its discretion in its award of fees and costs. **Plaintiff Williams pursued relief to which she believed the Trust would be entitled to enhance the financial position of her children, who will receive the corpus at the time of her passing. Requiring that Plaintiff Williams be held liable individually for any portion of the attorneys' fees and expenses constitutes an unreasonable and inequitable punishment not contemplated within T.C.A. § 35-15-1004.** Further, given that there are genuine issues of material fact remaining, and that summary judgment should

- 19 -

not have been granted, the Trial Court's award of attorneys' fees and costs should be reversed.

(Emphasis added).

But for her singular reference to Tennessee Code Annotated § 35-15-1004, Plaintiff failed to provide an argument setting forth her contentions with respect to the assessment of attorney's fees, including reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record. As we have previously explained, failing to do so constitutes a waiver of the issue:

> As this Court has previously stated, we rely on the appellant to provide "[a]n argument . . . setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record . . . relied on." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 400 (Tenn. Ct. App. 2006) (quoting Tenn. R. App. P. 27(a)(7)). Moreover, "[i]t is not the function of the appellate court to research and construct the parties' arguments." *Id.* "The failure of a party to cite to any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue." *Id.*

*Highlands Physicians, Inc. v. Wellmont Health Sys.*, 625 S.W.3d 262, 304 (Tenn. Ct. App. 2020).

Thus, we shall limit our analysis to Plaintiff's contention that the trial court erred in assessing Cumberland's attorney's fees and expenses against her individually pursuant to Tennessee Code Annotated § 35-15-1004(a).

Tennessee Code Annotated § 35-15-1004(a) authorizes the assessment of attorney's fees and expenses in a judicial proceeding arising from the administration of a trust. It reads in pertinent part: "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney's fees, to any party, to be paid by another party or from the trust that is the subject of the controversy." Tenn. Code Ann. § 35-15-1004(a).

The statute affords the trial court the discretion to assess attorney's fees and expenses against "another party" to the litigation or "the trust." *See id.* Plaintiff was a party. In fact, she was the plaintiff in the litigation at issue. Thus, the trial court had the discretion to assess Cumberland's attorney's fees and expenses against her and/or the Trust, which is exactly what the trial court did. Because Cumberland was the prevailing party on all issues in this trust litigation, in which Plaintiff was the sole plaintiff, we find no abuse of

discretion with the trial court's decision to assess Cumberland's attorney's fees and expenses against Plaintiff and/or the Trust.

IV.

Cumberland requests that this court award its attorney's fees and expenses incurred in defending this appeal pursuant to Tennessee Code Annotated § 35-15-1004(a). It further requests that the fees and expenses be awarded jointly and severally against Plaintiff personally and the Trust.

As noted immediately above, Tennessee Code Annotated § 35-15-1004(a) authorizes the assessment of attorney's fees and expenses in a judicial proceeding arising from the administration of a trust. And it specifically authorizes, as justice and equity may require, the award of reasonable attorney's fees and expenses to any party, "to be paid by another party or from the trust that is the subject of the controversy." Tenn. Code Ann. § 35-15-1004(a). Because Cumberland has prevailed on each issue on appeal, we find that justice and equity require that Cumberland recoup its reasonable attorney's fees and expenses incurred on appeal and that such fees and expenses be assessed against Plaintiff and the Trust, jointly and severally.

Accordingly, we remand this issue to the trial court to determine the reasonable and necessary attorney's fees and expenses Cumberland incurred in this appeal and to make the appropriate award against Plaintiff and the Trust, jointly and severally.

**CONCLUSION**

For the foregoing reasons, we affirm the judgment of the trial court in all respects and remand this case to the trial court for further proceedings consistent with this opinion. Costs of appeal are assessed against the appellant, Nancy Hardison Williams.

_____
FRANK G. CLEMENT JR., P.J., M.S.

- 21 -